CHARLES SCHNER, JR., et al., as Executors of CHARLES SCHNER, Deceased, et al., Respondents, v. SEYMOUR SIMPSON et al., Doing Business under the Name of GARDEN FOOD COMPANY, Appellants, et al., Defendant.

First Department, November 29, 1955.

*George A. Garvey* of counsel (*Garvey & Conway,* attorneys), for appellants.

*Myron Sulzberger, Jr.,* of counsel (*Seymour S. Epstein* with him on the brief; *Sulzberger & Sulzberger,* attorneys), for respondents.

Bastow, J. The plaintiffs have obtained a judgment against the appellants in an action to recover damages for injuries claimed to have been received by the plaintiff, Florence Schner. At the time of the accident two of appellants' employees were standing in front of an open cellarway facing the building occupied by the appellants for use as a market. A truck was parked at the curb and a slide or roller had been placed from an opening in the side of the body of the truck to the street level. It appears to be undisputed that the injured plaintiff while walking on the sidewalk at this point in some manner collided with one of the employees and was knocked or fell to the walk. The controverted issue was the manner in which the collision occurred — the plaintiff contending that she had been knocked down by the employee as he turned around. The employee, however, testified that he was standing immobile when the plaintiff walked against him.

It is against this background that we consider the submission of appellants that the trial court erred in permitting the injured plaintiff to testify over objection that immediately after the accident the employee said to her " I am sorry I knocked you down, but I think you will be able to get up." It is fair to assume that although the making of the statement was denied by the employee, it must have had considerable probative weight with the jury.

Generally speaking, employment does not carry authority to make either declarations or admissions. In such cases, the question is one of agency and the agent's authority to make the admissions or declarations must first be shown. (Chamberlayne on Trial Evidence [2d ed.], § 842.) It was on this broad general ground that appellants' trial counsel based his objection. In overruling the objection the trial court commented that the injured plaintiff " said he was an employee of the [appellants]." The record discloses no proof that the employee had authority to bind his employer by the stated admission and it was not admissible solely on proof of employment.

The respondents here contend, however, that the statement of the employee was admissible " as being within the theory of *res gestae* and as being a spontaneous declaration exception to the hearsay rule." These alternatives require separate consideration. The doctrine of the admissibility of evidence as part of the *res gestae* involves a loosely used phrase that appears to have caused much confusion in legal thinking on this subject. Thus, Professor Wigmore points out that " [t]he doctrines to which it has been applied possess, all of them, a right to existence under well-recognized preexisting principles and can be explained without a resort to this phrase. No more can be said for it than that it was once much used in the course of the development of some important aspects of two of these doctrines." (6 Wigmore on Evidence [3d ed.], § 1767.) The first of these is the " verbal act " doctrine where the utterance is admitted as a verbal part of an act, that is, of the *res gestae*.

The substance of this doctrine was early recognized in this State in *Luby* v. *Hudson Riv. R. R. Co.* (17 N. Y. 131) where the court considered the application of the so-called *res gestae* rule to declarations of an agent or servant. It was said (p. 133) that " [t]he declarations of an agent or servant do not in general bind the principal. Where his acts will bind, his statements and admissions respecting the subject matter of those acts will also bind the principal, if made at the same time and so that they constitute a part of the *res gestae*. To be admis-

sible, they must be in the nature of original and not of hearsay evidence. They must constitute the fact to be proved, and must not be the mere admission of some other fact. They must be made, not only during the continuance of the agency, but in regard to a transaction depending at the very time." The statement of the employee in the instant case having been made after the happening of the accident was not admissible as part of the " *res gestae* " because it was not a verbal act but a statement made with respect to a past event by an agent not authorized to make confession. (*Golden* v. *Horn & Hardart Co.*, 244 App. Div. 92; *Vadney* v. *United Traction Co.*, 188 App. Div. 365; *Burns* v. *Borden's Condensed Milk Co.*, 93 App. Div. 566.)

A second frequent and not very accurate application of the *res gestae* nomenclature, although not truly a part of the act itself, is the rule that under certain conditions statements are received in evidence that were made after the act or transaction has been completed. This has been denominated for convenience " the spontaneous exclamation exception to the hearsay rule." (*People* v. *Del Vermo*, 192 N. Y. 470, 485.) In substance, the test is whether the declarations are shown to have been uttered spontaneously so that the declarant obviously had no time or opportunity for fabrication. Moreover, " an agent's declaration is receivable although made outside the scope of his authority if, under a rule of evidence, its admissibility is not made dependent upon the fact of agency. Thus, a spontaneous declaration made by an agent is admissible to the same extent as if made by a person not an agent. Wigmore on Evidence, 3d Ed., sec. 1756a; Restatement, Agency, sec. 289." (Richardson on Evidence [7th ed.], § 331.)

It thus appears that if the declaration under consideration meets the accepted tests of spontaneity, it was properly received. Ordinarily, it is a preliminary question for the trial court as to whether the circumstances under which a declaration was made are such as to make it reasonably probable that it was spontaneous. (4 Chamberlayne on Evidence, § 3006.) In the absence of such a determination, we shall pass upon the question.

The general principle of the spontaneous-exclamation rule is based on the experience that, under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. (6 Wigmore on Evidence [3d ed.], § 1747.) Measured by these require-

ments we conclude that the claimed spontaneous exclamation was not made under such circumstances as to justify its receipt in evidence as an exception to the hearsay rule. The words were not exclamatory but were words of apology followed by the expression of an opinion that the injured plaintiff would be able to get up. Clearly, the employer should not be here charged with responsibility for the statement of an employee that the latter thought a person, who it was subsequently discovered had a fractured leg, was able to get up.

Research has disclosed no decision in this jurisdiction where the rule has been extended to the length here suggested. On the contrary, in *Jankowski* v. *Borden's Condensed Milk Co.* (176 App. Div. 453, 454) it appeared that defendant's employee immediately after the happening of an accident stated that he was at fault. In reversing the judgment for plaintiff for the error in receiving such admission, the court wrote that " The words said to have been used by the driver were not exclamatory, but in confession; not accompanying the act, but spoken in a subsequent conversation; not an outcry qualifying the thing done, but in explanation and in accountability.''

The judgment appealed from should be reversed, with costs to appellants to abide the event, and a new trial granted.

BREITEL, J. P., BOTEIN, RABIN and BERGAN, JJ., concur.

Judgment unanimously reversed and a new trial ordered, with costs to the appellants to abide the event.